UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BENTON WILLIAMS, JR.,             Case No. 1:23-cv-513
    Plaintiff,                                 Barrett, J.
                                                    Litkovitz, M.J.
    vs.

SANTANDER CONSUMER USA INC., et al.,     **REPORT AND**
    Defendants.                                  **RECOMMENDATION**

Pro se plaintiff Benton Williams, Jr., brings this action alleging various claims related to his purchase of a 2014 Volkswagen Passat (Vehicle) from NCAMN LLC d/b/a/ Nissan of Streetsboro (Dealer) pursuant to a Retail Installment Sale Contract (Contract) (*see* Doc. 1 at PAGEID 25). Plaintiff's claims are premised on his position that defendants Santander Consumer USA Inc. (SC USA), Santander Drive Auto Receivables LLC, and Santander Drive Auto Receivables Trust 2022-1 may not legally attempt to collect plaintiff's debt under the Contract. (*See* Doc. 1 at PAGEID 10, ¶ 2). This matter is before the Court on defendants' motion to compel arbitration (Doc. 14), plaintiff's opposition (Doc. 17),[1] and defendants' reply (Doc. 19).

I.     Background[2]

According to the partial copies of the Contract attached to his complaint, plaintiff financed his October 19, 2021 purchase of a 2014 Volkswagen Passat from the Dealer. (*See* Doc. 1 at PAGEID 25-27, 63-65). Defendants attach a complete copy of the Contract to their motion, and the corresponding pages appear identical to the copies proffered by plaintiff. (*See*

---

[1] Plaintiff's opposition includes a motion for summary judgment. The Clerk docketed the filing a second time to capture both filing events. (*See* Doc. 18).
[2] On a motion to compel arbitration, courts should "treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the nonmoving party." *Great Am. Ins. Co. v. Gemma Power Sys., LLC*, No. 1:18-cv-213, 2018 WL 6003968, at *2 (S.D. Ohio Nov. 15, 2018) (quoting *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003)).

Doc. 14-1 at PAGEID 120-24). The Contract provides that plaintiff was to make 72 monthly payments of $426.82 beginning on December 3, 2021. (*Id.* at PAGEID 120). The Contract also includes an arbitration provision,[3] which states as follows:

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral binding arbitration and not by a court action.

(*Id.* at PAGEID 124).

The Dealer assigned the contract to SC USA. (*Id.* at PAGEID 124).[4] According to plaintiff's complaint, SC USA commenced collection activities on January 13, 2022. (*See* Doc. 1 at PAGEID 12, ¶ 11; PAGEID 67-68). Plaintiff's lawsuit followed, alleging a series of federal- and state-law claims related to the fact that the Contract was subsequently sold from SC

---

[3] In the final signature block preceding plaintiff's signature, the Contract states: "You acknowledge that you have read all pages of this contract, including the arbitration provision below, before signing below." (*Id.* at PAGEID 124). (*See also id.* at PAGEID 120 (similar provision/signature on the first page of the Contract)).

[4] Defendants support their motion with the declaration of SC USA's Director of Customer Service, Amanda Van Haren. (*Id.* at PAGEID 117-18). In it, Ms. Van Haren states that the Dealer assigned SC USA the Contract, which is a business record. (*See id.* at PAGEID 118, ¶¶ 6, 8).

2

USA to Santander Drive Auto Receivables LLC, and then to Santander Drive Auto Receivables Trust 2022-1. (*See id.* at PAGEID 5, ¶ 1; Doc. 17 at PAGEID 150).

Defendants argue that all of plaintiff's claims are subject to arbitration pursuant to the arbitration provision as well as the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq*. Defendants argue that the issue of arbitrability itself is delegated to the arbitrator under the Contract. Defendants assert that the arbitration provision in the Contract is valid and enforceable, and plaintiff's claims fall within its scope. Finally, defendants argue that dismissal is the appropriate disposition under the circumstances.

In response, plaintiff argues that defendants do not have standing to enforce the Contract's arbitration provision. While not entirely clear, plaintiff seems to argue that defendants forged the proffered copy of the Contract, and the Contract is otherwise not enforceable because it was securitized.

In reply, defendants contest both of plaintiff's arguments but rest on their position that the question of arbitrability itself was designated to the arbitrator under the Contract. Defendants emphasize that plaintiff does not challenge the overall enforceability of the Contract's arbitration provision.

**II.    Law**

The FAA reflects a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2). *See also Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505-06 (2018). The primary goal of the FAA is to "ensur[e] that private agreements to arbitrate are enforced according to their terms." *Volt Info Scis., Inc v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989). The Supreme Court has emphasized that the FAA "requires courts 'rigorously' to 'enforce arbitration

3

agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted.'" *Epic Sys. Corp.*, 584 U.S. at 506 (emphasis deleted) (quoting *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)).

  Notwithstanding this preference for arbitration, before an unwilling party can be compelled to arbitrate, a determination must be made on the "gateway issues" of (1) "whether the dispute is arbitrable, meaning that a valid agreement to arbitrate exists between the parties," and (2) the arbitrability of specific claims, that is, whether "the specific [claim] falls within the substantive scope of that agreement." *Jefferis v. Hallrich Inc.*, No. 1:18-cv-687, 2019 WL 3462590, at *3 (quoting *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)) (report and recommendation), *adopted*, 2019 WL 3975774 (S.D. Ohio Aug. 22, 2019). Although courts ordinarily determine arbitrability, the FAA allows parties to an arbitration agreement to include a "delegation provision" in their agreement by which they agree that an arbitrator, rather than a court, will resolve "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular dispute,'" as well as the merits of the dispute. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. ____, 139 S. Ct. 524, 529 (2019) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). *See also De Angelis v. Icon Ent. Group Inc.*, 364 F. Supp. 3d 787, 792-93 (S.D. Ohio 2019). "[T]he question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator," except if by their agreement "the parties clearly and unmistakably provide otherwise." *AT&T Techs., In. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

A "delegation provision" under which the parties agree to arbitrate "gateway questions of arbitrability" is governed by the FAA. *De Angelis*, 364 F. Supp. 3d at 793 (quoting *Rent-A-Center*, 561 U.S. at 68-69). Courts apply principles of contract interpretation to determine the parties' agreement. *Manlove v. Volkswagen Aktiengesellschaft*, No. 1:18-cv-145, 2019 WL 2291890, at *2 (E.D. Tenn. Jan. 11, 2019) (quoting *Rent-A-Center*, 561 U.S. at 70). Courts are bound to respect the parties' agreement on delegation of the arbitrability question as embodied in their contract. *Henry Schein*, 139 S. Ct. at 531. *See also De Angelis*, 364 F. Supp. 3d at 794. If the parties have agreed "to let the arbitrator rule on his or her own jurisdiction, any other threshold questions about arbitrability must be submitted to the arbitrator, not this Court." *FCCI Ins. Co. v. Nicholas County Lib.*, No. 5:18-cv-038, 2019 WL 1234319, at *9-10 (E.D. Ky. Mar. 15, 2019). If the parties have contractually delegated the arbitrability question to the arbitrator, a court "may not decide" that question, "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 139 S. Ct. at 529, 530.

Courts considering a motion to compel arbitration should "treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the nonmoving party." *Great Am. Ins. Co.*, 2018 WL 6003968, at *2 (quoting *Raasch*, 254 F. Supp. 2d at 851). To defeat the motion, the nonmovant has the burden to "show a genuine [dispute] of material fact as to the validity of the agreement to arbitrate." *Danley v. Encore Capital Grp., Inc.*, 680 F. App'x 394, 397 (6th Cir. 2017) (quoting *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)).

III. Analysis

    A. <u>Delegation provision</u>

5

The Contract includes a delegation clause, which provides:

> Any claim or dispute, . . . (including . . . *the arbitrability of the claim or dispute*), between you and . . . our . . . *assigns*, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral binding arbitration and not by a court action.

(Doc. 14-1 at PAGEID 124 (emphasis added)). The plain language of the Contract leaves arbitrability of plaintiff's claims to the arbitrator. As such, any threshold question regarding the enforceability or applicability of the Contract's arbitration provision should be left to the arbitrator.

B. <u>Gateway issues</u>

Even if these gateway issues were for this Court to decide, however, it would conclude that the Contract's arbitration provision applies to plaintiff's lawsuit. The first threshold question is whether a valid agreement to arbitrate exists between the parties. *Javitch*, 315 F.3d at 624. "[I]n determining the enforceability of an arbitration agreement," courts are to "apply state law of contract formation." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016) (citing *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007)). Under Ohio law, the elements of a valid contract include an offer, acceptance, contractual capacity, mutual assent, consideration, and the legality of the contract's object and consideration. *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002).

In her declaration, SC USA's Director of Customer Service authenticated defendants' proffered copy of the Contract and states under penalty of perjury that the Dealer assigned SC USA the Contract. (Doc. 14-1 at PAGEID 118, ¶¶ 6, 8). The terms of the Contract reflect the elements of a valid contract under Ohio law: the Dealer offered plaintiff a financed purchase of a 2014 Volkswagen Passat for a "Total Sale Price" of $30,931.04; plaintiff signed each page of the

6

Contract and both the Dealer and plaintiff signed the final page of the contract. (*Id.* at PAGEID 120-24). Indeed, plaintiff does not appear to dispute the validity of the Contract when executed.

Plaintiff seems to argue instead that SC USA has no standing to enforce the Contract because the copy of the Contract attached to defendants' motion (*see* Doc. 14-1 at PAGEID 120-24) is a forgery and SC USA "securitized" plaintiff's loan. The only evidence plaintiff offers to support these arguments is a "Bloomberg Property Analysis Report" prepared by Steven Bernstein, a "Certified Mortgage Securitization Auditor," which is attached to plaintiff's complaint. (*See* Doc. 1 at PAGEID 23-66). But in Mr. Bernstein's affidavit, included in this report, he affirms that plaintiff "signed a RETAIL INSTALLMENT SALE CONTRACT - SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION) in favor of Santander Consumer USA, Inc. on October 19 2021." (*Id.* at PAGEID 61). Mr. Bernstein's report includes the two partial copies of the Contract that, as noted above, appear identical to the corresponding portions of the copy of the Contract attached to defendants' motion. Mr. Bernstein's report provides no evidence that the copy of the Contract attached to defendants' motion is a forgery.

Otherwise, in the "Report Summary" section of Mr. Bernstein's report, he concludes that the Contract was "[s]ecuritiz[ed]" on or about February 23, 2022, and that the assignment of the Contract to SC USA was not recorded in Hamilton County, Ohio. (*Id.* at 45). Neither circumstance affects the validity of the Contract or its arbitration provision. In the mortgage-loan context, it is clear that "securitization alone does not render a note . . . unenforceable and does not alter a borrower's obligation to pay back his loan." *Baker v. Huntington Nat'l Bank*, No. 3:23-cv-00358, 2024 WL 361663, at *2 (S.D. Ohio Jan. 31, 2024) (quoting *Dauenhauer v. Bank of N.Y. Mellon*, 562 F. App'x 473, 480 (6th Cir. 2014)). Plaintiff offers no authority to suggest that the result would be different in the auto-loan context. Further, to the extent plaintiff

7

argues that SC USA cannot enforce the Contract because the assignment was not recorded in Hamilton County, Ohio, plaintiff offers no authority to support that position. *Cf. In re Rice*, 462 B.R. 651, 662 (B.A.P. 6th Cir. 2011) ("Under the laws of Ohio . . . , there is simply no requirement to note the assignment of a security interest in a motor vehicle on the certificate of title in order for that interest to remain properly perfected.").

In sum, there is no evidence to support plaintiff's assertion that defendants' copy of the Contract is a forgery or that securitization of plaintiff's loan rendered the Contract unenforceable. *See Danley*, 680 F. App'x at 397 ("[I]t [i]s [the non-moving party's] burden to present facts such that a reasonable factfinder could conclude the arbitration agreement did not exist."). The uncontroverted evidence demonstrates that the Dealer assigned the Contract, which contains a valid and enforceable arbitration provision, to SC USA.

The second threshold question is whether plaintiff's claims in this lawsuit fall within the scope of the Contract's arbitration provision. *Javitch*, 315 F.3d at 624. "If the matter at issue can be construed as within the scope of the arbitration agreement, it should be so construed unless the matter is expressly exempted from arbitration by the contract terms." *Jones v. U-Haul Co. of Massachusetts & Ohio Inc.*, 16 F. Supp. 3d 922, 942 (S.D. Ohio 2014) (quoting S*imon v. Pfizer, Inc.*, 398 F.3d 765, 773 n.12 (6th Cir. 2005)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* (quoting *Moses H. Cone*, 460 U.S at 24-25) (alteration in original).

Plaintiff's claims range from state-law claims of unjust enrichment and negligent and intentional infliction of emotional distress to claims arising under federal fraud, racketeering, and consumer protection statutes. (*See* Doc. 1 at PAGEID 13-22). While the exact nature of plaintiff's claims are far from clear, they all originate from his purchase of a 2014 Volkswagen

8

Passat and related Contract and unquestionably fall within the scope of the Contract's arbitration provision that, again, covers:

> *[a]ny claim or dispute, whether in contract, tort, statute or otherwise* (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and . . . our . . . assigns, *which arises out of* or relates to your credit application, purchase or condition of this vehicle, this contract *or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)*. . . .

(Doc. 14-1 at PAGEID 124 (emphasis added)). Plaintiff presents no evidence to create an issue of fact that his claims should be excluded from arbitration. *See Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) ("Where . . . the arbitration clause is broad, 'only an express provision excluding a specific dispute, or "the most forceful evidence of a purpose to exclude the claim from arbitration," will remove the dispute from consideration by the arbitrators.'") (quoting *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003)).

C. Stay or dismissal

Finally, the Court must determine if this matter should be stayed pending arbitration proceedings or dismissed. The FAA requires that a court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . ." 9 U.S.C. § 3. Nevertheless, dismissal, rather than a stay of proceedings, is proper where all remaining claims are arbitrable. *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) ("[Appellant] challenges the dismissal of his suit, asserting that 9 U.S.C. § 3 requires district courts to stay suits pending arbitration rather than dismiss them. We have already rejected that argument.").

All of plaintiff's claims are subject to arbitration. Dismissal, rather than a stay of proceedings pending the conclusion of arbitration, is therefore appropriate. *See Napier v. W. Chester Hosp., LLC*, No. 1:18-cv-234, 2019 WL 1317859, at *3 (S.D. Ohio Mar. 22, 2019) ("The Court is within its discretion to dismiss a case where all claims are subject to arbitration.").

D. Motion for summary judgment

Given the foregoing conclusion, plaintiff's motion for summary judgment (Doc. 18) should be denied as moot. *See Mullins v. U.S. Bancorp Invs., Inc.*, No. 1:15-cv-126, 2016 WL 1420999, at *4 (W.D. Ky. Apr. 8, 2016) (denying the plaintiff's motion for summary judgment as moot where the defendant's motion to compel arbitration and dismiss was granted).

**IT IS THEREFORE RECOMMENDED THAT**:

1. Defendants' motion to compel arbitration (Doc. 14) be **GRANTED** and this case be **DISMISSED** without prejudice from the docket of this Court.

2. Plaintiff's motion for summary judgment (Doc. 18) be **DENIED as moot**.

Date: 3/11/2024

Karen L. Litkovitz
United States Magistrate Judge

10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BENTON WILLIAMS, JR.,
    Plaintiff,

vs.

SANTANDER CONSUMER USA INC., et al.,
    Defendants.

Case No. 1:23-cv-513
Barrett, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).